# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION
_____

**MIMI'S SWEET SHOP, INC. ®,**

*Plaintiffs,*

VS.

**CHARTER TOWNSHIP OF LANSING DOWNTOWN DEVELOPMENT AUTHORITY,**
**STEVEN L. HAYWARD,**
**MICHAEL G. EYDE,**
**EASTWOOD, LLC,**
**TOWNEAST, LLC,**
**TOWNEAST PARKING LLC,**

*Defendants.*
_____/

*DOCKET NO. 1:18-CV-00337-JTN*
*HON. JANET T. NEFF*

## JURY TRIAL REQUESTED

*PERRONE LAW, P.C.*
Jacob A. Perrone (Mich Bar No. 71915)
*Attorney for Plaintiffs*
221 W. Lake Lansing Rd. Ste. 200
East Lansing, MI 48823
(517) 351-0332
_____

## SECOND AMENDED COMPLAINT AND JURY DEMAND

**NOW COMES**, Plaintiff herein, Mimi's Sweet Shop, Inc.®, by and through its attorney, Perrone Law, P.C. and **JACOB A. PERRONE**, and states for this Second Amended Complaint the following:

### JURISDICTIONAL ALLEGATIONS

1.       This Honorable Court has subject matter jurisdiction over this matter based on a federal question pursuant to 28 U.S.C. § 1331 *et seq*, because Plaintiff' claims arise pursuant to: **1)**

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com



18 U.S.C. § 1961-1968 ("**Civil RICO**"); 2) 18 U.S.C. § 1951, *et seq* ("**Hobbs Act**"); **3)** 18 U.S.C. 1346 ("**Honest Services Fraud**"); **4)** 18 U.S.C §1344 ("**Federal Funds Act**"); **5)** 18 U.S.C. §§ 1956-1957 ("**Money Laundering Act**")

2.    This Honorable Court has supplemental jurisdiction of Plaintiff's claims arising under state law because the claims are so related to claims in this action with the Court's original jurisdiction that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367. ("**Supplemental Jurisdiction**")

3.    Venue is proper in the United States District Court for the Western District of Michigan pursuant to provisions of 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a), in that a substantial part of the events or omissions giving rise to Plaintiff' claims occurred in this judicial district.

## *THE PARTIES*

### Plaintiff

4.    Mimi's Sweet Shop ® is a Michigan corporation, doing business in Ingham County in the Western District of the State of Michigan as an ice cream and candy shop. Edward F. Rodgers II is its Registered agent and its registered Address is 2420 Lyman Dr., Lansing, MI 48912. (hereinafter referred to as "**Mimi's Sweet Shop**")

### Defendants

5.    The Charter Township of Lansing Downtown Development Authority is a Michigan downtown development authority and it may be served at 3209 W. Michigan Ave. Lansing, MI 48917, operating in the Western District of the State of Michigan. ("**DDA**") The DDA was authorized and organized under 1975 P.A. 197, MCL 125.1651, *et. seq*, as amended, under the jurisdiction and authority of The Charter Township of Lansing.

6.    Steven L. Hayward is resident of Ingham County in the Western District of Michigan and can be served with process at 3618 Springbrook Ln, Lansing, MI 48917. Hayward is the Executive Director of the DDA and has acted as a fiduciary for Eyde and his various business entities.  Any reference to Hayward in this Complaint shall be in his capacity as a Public Official, acting on behalf of the DDA, unless otherwise specifically provided. ("**Hayward**")

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com



Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com

7.      Michael G. Eyde is a resident of Barry County in the Western District of the State of Michigan and can be served with process at 15505 M-43 Hickory Corners, Michigan 49060. ("**Eyde**") Defendant Eastwood, LLC is a Michigan limited liability company doing business as a property holding company in Ingham County in the Western District for the State of Michigan, whose owner and resident agent is Eyde and registered address is 3303 W. Saginaw Ste C-3, Lansing, MI 48917. ("**Eastwood**") Eastwood was formed by Eyde as a land holding company for Eyde's prior shopping center development that includes sixty-six (66) stores, including Walmart and Sam's Club. (the "**Towne Center**") The Towne Center was sold to a private party in 2005.  Eastwood LLC remains primarily controlled by Eyde and upon information and belief has various subsidiaries, sister companies, predecessors, and/or successors.

8.      Towneast, LLC, Michigan limited liability company, whose resident agent is Hayward and registered address is 3209 W. Michigan Ave, Lansing, MI 48917 is doing business as a real estate holding company for the Height's retail spaces in Ingham County in the Western District of the State of Michigan.  Defendant Towneast Parking, LLC is a Michigan limited liability company doing business as a real estate holding company for the Height's parking garage in Ingham County in the Western District of the State of Michigan. Both entities were formed January 14, 2015 in anticipation of an agreement between the DDA and Eastwood for a partnership between the DDA and Eastwood also known as the Joint Venture Agreement, as defined below. (hereinafter referred to respectively as "**Towneast LLC**" and "**Towneast Parking**" and collectively as "**Towneast**")

9.      **Affiliates**. Affiliates, for purposes of this Complaint are business concerns, organizations, or individuals that control each other or that are controlled by a third party. Control may consist of shared management or ownership; common use of facilities, equipment, and employees; or family interest.  Further, for purposes of this Complaint Affiliates includes family members.  All Defendants so named in the above caption are hereby incorporated by reference. ("Affiliates")

10.      The above mentioned Defendants will be collectively referenced as the "**Defendants**"



*THE GENERAL NATURE OF THE CASE*

11.    This is an action for financial damages and losses caused by the operation of an illegal and fraudulent real estate Enterprise and conspiracy by Defendants.

12.    The Heights Enterprise, as more specifically plead and defined below, has been operating in violation of federal law since at least as far back as January 29, 2015 and has continued until present and is likely to continue in the future based on the level of control exercised by the principals.

## BACKGROUND FACTS

### *Heights at Eastwood*

13.    Hayward, as Executive Director of the DDA, began aggressively approaching Margaret Sanders to become a retail tenant at the Heights with an idea to open an ice cream and candy shop at the Heights beginning as early as September, 23, 2014.  On November 30, 2014 Hayward sent Sanders a Commercial Space Retail Lease Proposal ("**Mimi's Proposal**") that created the appearance that Sanders could expect revenues of $80,000.00 per month and promising maximum signage and occupancy. The Heights was in dire need of leases to be signed for the vacant retail space under the parking garage and desperately sought out commercial retail tenants. Sanders formed Mimi's Sweet Shop and applied for a loan through the Small Business Administration.  Mimi's Sweet Shop received a loan for $234,800.00 and line of credit for credit card up to $10,000.00 from Huntington Bank for the startup and operating costs with personal Guarantees. ("**SBA Loan**")

14.    Sanders eventually signed a Lease on behalf of Mimi's Sweet Shop to become a retail tenant at the Heights on July 28, 2015 attached as **Exhibit A** hereto and incorporated herein by reference. ("**Lease**") It was represented to her that original construction costs were anticipated to be $175,000 and the DDA agreed to contribute $70,000 of that amount.  Mimi's Sweet Shop's total anticipated construction costs was $105,000. Sanders applied for a loan through the Small Business Administration ("SBA") based on information and belief that she received from Hayward that this would be a viable and successful business in the Heights at Eastwood. It was represented to her by Hayward that the approximate cost to build the space would be about $175,000. The DDA would cover the cost of preparing the "White Box" to facilitate the build-out for Mimi's Sweet Shop. The DDA's cost for the "White Box" as reported to bank was $96,600.00.  The final

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



cost for plaintiff after accounting for "soft" construction costs required by Hayward was $293,990.00.

15.     During the period between January 28, 2015 and the eventual Lease signing on July 28, 2015 there were a number of significant dates to the negotiations and underlying SBA Loan application process for the Lease and subsequent to execution and eventual approval where Hayward made numerous "guarantees",  promises, and/or representations to induce Plaintiff to lease retail space at the Heights:

     a.     **1)** Mimi's Sweet Shop would gross ***"at least"*** *$400,000.00 to $500,000.00* per year when the retail spaces at the Heights were fully leased.;

     b.     **2)** the Heights would be fully leased by May 2016 prior to the opening of Mimi's sweet shop although Hayward knew and failed to disclose that **Tony Sacco's Pizza Parlor ("Tony Saccos")** would be closing before signing the Lease;

     c.     **3)** Mimi's Sweet Shop's total construction costs "would be $105,000" until she was informed of the additional costs by Hayward including, but not limited to the costs included to hire a construction manager, final equipment purchases, additional electrical work and advertising;

     d.     **4)** Hayward knew and failed to disclose that Eyde was going to veto Bar Louie's Lease at the Heights and construct Boston's Restaurant away from the Heights;

     e.     **5)** Hayward was negotiating the Lease at the same time in 2015 that he was negotiating the Joint Venture Agreement between Eyde, Eastwood, and the DDA;

     f.     **6)** Hayward and the DDA have repeatedly stated they are "seeking people that want the walkable urban experience."

16.     After Signing the Lease **1)** Hayward informed Sanders about the "soft" construction costs after closing and Mimi's Sweet Shop ended up paying an extra $112,307.36 and Project Manager Costs in the amount of $17,719.00. **2)** Hayward made ongoing representations about a remodeled hallway with entries to the Italian restaurant and Mimi's Sweet Shop. Hayward stated he believed "this would enhance foot traffic into Mimi's Sweet Shop." **3)** The board has however vetoed numerous businesses that would have generated substantial foot traffic in the area, including a bar and Mexican restaurant; **4)** Defendant's deliberate drawn out contract negotiations delayed development on the site, further reducing the amount of people drawn to the area.

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



17.     On or about April 22, 2015 Hayward signed an agreement on behalf of the DDA with Eastwood without a board vote that included a financial interest for Eastwood in the public project and separated the parking garage from the retail spaces in Towneast Parking, LLC and Towneast, LLC respectively. The Joint Venture Agreement gave Eastwood veto power over almost all major decisions at the Heights including, but not limited to: 1) hiring and firing contractors, 2) leasing, 3) marketing, and 4) contracting for the Heights. On October 26, 2016 the Joint Venture Agreement was approved by the DDA Board affording Eastwood and Eyde virtually absolute control of the Heights and additional financial incentives associated with his "membership interest" in the Heights. ("**Joint Venture Agreement**")

18.     On October 31, 2016 representatives of Mimi's Sweet Shop had a meeting with Hayward to discuss the lack of development at the Heights.   Hayward assured Plaintiff that there would be future development soon which would help Plaintiff business grow. He indicated that Plaintiff did not have to worry about paying rent until the business was at least at the "breakeven point." Defendant Hayward assured Plaintiff he would continue to hold the two outstanding checks in the amount of $3,466.90 and $5,000.00.

19.     On January 9, 2017 Hayward again assured Plaintiff that a Mexican restaurant would move into Tony Sacco's location by February or March 2017.  Defendant Hayward again reassured Plaintiff not to worry about the rent. Hayward indicated he would move forward in installing wayfinding signs at all entrances to Eastwood indicating the names of the businesses in the Heights.

20.      On March 15, 2017 Hayward represented the Mexican Restaurant would open in April and an Italian restaurant next to Mimi's Sweet Shop would open in May. Hayward again represented that he was working on wayfinding signage for the Heights, reviewing a proposal, and that he could have the signs up within a month.  Hayward also said he was working with Eastwood on putting advertising for all business at the Heights at the entrance of Eastwood and thought this would be done within sixty (60) days.  Plaintiff explained to Hayward that the total indebtedness including build-out and operating costs totaled $317,500.00..

21.     On April 10, 2017 Sanders informed Hayward that Mimi's Sweet Shop couldn't continue to operate at a loss due to the failure of the DDA to develop the Heights or provide any assistance in advertising as promised.  When asked about a potential leasing agent Hayward acknowledged that there wasn't a real estate agent to assist in leasing new business at the Heights. Defendant Hayward specifically said, "I am not a real estate agent but I am doing the leases and

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com

property development, so I am in charge of this area." Hayward further stated, Eastwood, LLC and Eyde did not want to spend money."

22. The Heights' 88,000 square feet of commercial space has never achieved even 30% occupancy. The actual financial condition of the DDA and the Heights was dire and DDA pledged unconditional repayment of $5,013,788 promissory note dated August 31, 2016, with Eyde as the Creditor, the Towneast LLC's as the debtor and the DDA as the guarantor to plug the holes in the fraudulent accounting underlying the Heights. As a result, funds for developing the Heights needed to support advertising, develop foot traffic, and maintain appropriate capitalization were diverted away from the Heights. Said conduct, along with the other conduct described herein, was committed on a regular and consistent basis during the Height's Period, and comprised a significant part of the pattern of predicate acts committed during the operation of the Heights Enterprise.

## *THE HEIGHTS ENTERPRISE*

23. Each of the Defendants is a "person" as defined by 18 U.S.C. § 1961(3), because each is an entity capable of holding a legal or beneficial interest in property. The Defendants, and other related business entities controlled by the Defendants were used as instrumentalities of the Heights Enterprise, both named and unknown, who participated in the activities described in this Complaint are collectively an "Enterprise" within the meaning of 18 U.S.C. §1961(4), which allows groups of individuals associated in fact though not a legal entity to be an Enterprise. Eyde used Eastwood LLC, Towneast, LLC, and Towneast Parking, LLC, as an instrument of his and the Heights Enterprise's illegal conduct.

24. The Heights Enterprise had: a common purpose, described *infra*; an ongoing structure or organization supported by personnel or associates with continuing functions or duties; relationships among those associated with the Defendants; and longevity sufficient to permit those associates to pursue the Enterprise's purposes. (the **"Heights Enterprise"**) The predicate acts referenced below occurred well within ten (10) years of each other and were committed on a regular, periodic basis between September 23, 2014 and continuing through the present, such that they are sufficiently related to form a pattern of racketeering activity. (the "**Height's Period**")

25. The Heights Enterprise is distinct from the pattern of racketeering activity in which the Defendants have engaged and the Heights Enterprise is distinct from any one

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com



Perrone Law

defendant.  For purposes of section 18 U.S.C. § 1962(d), each of the Defendants knowingly agreed to facilitate others, to operate or to manage the Heights Enterprise.

26.      The Defendants constituted an association in fact Enterprise as described in 18 U.S.C. § 1961(4). The Enterprise exists separate and apart from the pattern of racketeering. Each Defendant is different and distinct from the association in fact Enterprise whose members function together as a continuing unit. The Enterprise's activities affected interstate or foreign commerce as the Defendants, each of which buys and/or sells or leases goods, real estate, and/or services for real estate development and leasing in interstate commerce.

27.      The constituent members of this association in fact Enterprise functioned as continuing unit and had the requisite structural features as mandated by *Boyle v. United States,* 556 US 938 (2009). **First,** it had a purpose, as members designed to keep Hayward and Eyde in a position of power and influence within the DDA to financially enrich themselves and the Defendants.   **Second**, there were relationships among those associated with the Heights Enterprise as the Defendants worked together using misleading and deceptive representations and deliberately omitting material facts concerning the true status of the financial stability of the Heights to defraud Mimi's Sweet Shop and others not named in this Complaint.

28.      The Defendants engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), because at least two (2) acts of racketeering activity were committed, the last of which occurred within two (2) years after the commission of a prior act of racketeering activity. Further, the conduct in the Heights Enterprise consisted of numerous acts committed at least on a monthly, if not on a weekly or daily basis throughout the Height's Period. The conduct was aimed to either embezzle the proceeds from the Heights or divert proceeds to other projects and diversion and money laundering of profits.

29.      These acts were related, as described *infra and supra*, because: **(1)** the same or similar purpose was to market and lease property based in significant part on material and false representations and artificially inflated project valuations, and upon information and belief false closing and sale documents. **(2)** the same or similar participants are the Defendants, Hayward, Eyde and their Affiliates described in this Complaint constituting the Heights Enterprise; **(3)** the same or similar victims are the lending institutions, property investors, and other such individuals and businesses who unknowingly contributed capital and resources used in   the   Heights Enterprise's scheme; and **(4)** the same or similar methods of commission are, for example, that members of the Heights Enterprise and its associates would make and cause to be made

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com

misleading and deceptive representations and deliberately omit material facts concerning the financial stability of the Heights. Further, said individuals would commit acts calculated to inflate the value of the Heights, and said individuals would divert and convert funds from the Heights which should have been used to market, develop, and gain the fiscal strength necessary for the Heights to survive as required by fiduciary duty.

## *CONDUCTING AFFAIRS OF THE ENTERPRISE*

30.     The Defendants Hayward and Eyde participated in the "operation or management" of the Heights Enterprise's affairs. Hayward was the central figure in the association in fact who ensured that the DDA provided preferential treatment and *quid pro quo* arrangements with the Defendants Hayward and Eyde and other used at the direction and control of the Defendants Hayward and Eyde either wittingly or unwittingly. In exchange for Hayward's illegal activities, other Defendants rewarded Hayward **1)** through cash payments; **2)** an appointment and contract to act as project manager on Eyde's developments outside the Heights; **3)** other lucrative independent consulting contracts for Eyde's multitude of businesses and entities.

31.     Defendants Hayward and Eyde structured their affairs to conceal the Heights Enterprise. Neither Plaintiff Mimi's Sweet Shop nor Sanders had any financial interest in any of the other development owned by the Heights Enterprise and had no ownership or financial interest in any of the business entities formed by Hayward or Eyde, including but not limited to the entities named as Defendants herein.

32.     Hayward remains the Executive Director of the DDA, and Eyde was the main developer for the Heights. Hayward was the DDA Director while an independent contractor, agent, and fiduciary of Eyde and Towneast, LLC (Joint Venture). He was directly involved in the operations of the DDA and the entities constituting a *de facto* conflict of interest. Further, he communicated directly with property investors in both Michigan and around the United States, including attending a conference in Las Vegas making representations to property investors regarding the financial status and future amenities and development in the Heights. Upon information and belief, at all relevant times including the Height's Period, Hayward was and remains the de facto chief financial officer of the DDA and/or multiple Eyde Affiliates.

33.     More specifically, Hayward was Executive Director of the DDA during the entire Height's Period enabling him virtually all control of the leasing and construction at the Heights as

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com



it was conducted in house by Hayward.  Further, through the Joint Venture Agreement all control was ceded to Eastwood and Eyde who, without any valid commercial reason, diverted retail opportunities away from the Heights.   By having a virtual monopoly on the closings of the Heights leasing and construction transactions Hayward could easily monitor and control how construction projects progressed, retail space was valued, and closings were documented, including but not limited to the statements of the value of the properties sold and retail spaces leased. Upon information and belief Hayward did this at the direction of Eyde. Hayward specifically has stated to Plaintiff, "I am not a real estate agent but I am doing the leases and property development, so I am in charge of this area."

34.     The office for Joseph Costello CPA, the accountant for Michael G. Eyde, was at all relevant times to this Complaint in the same office space as Eastwood LLC and, upon information and belief, a multitude of Eyde's other entities. Upon information and belief Hayward worked with Joseph Costello intimately on behalf of the DDA and in relation to his work as an independent contractor of Eyde and/or Eastwood. In this manner, Defendants Eyde and Hayward and others -- were intimately familiar with what each was doing in furtherance of the wrongful activities and practices described herein. Based on information and belief, once each of the closings was complete, the documents were stored with Hayward.  Further, Eastwood LLC had the exclusive rights to market, sell, lease and determine construction contractors at the Heights by design through the Joint Venture Agreement. Accordingly, the DDA provided oversight of the Height's business practices, which enabled and facilitated the wrongful conduct, inflated appraisals, false closing documents, fraudulent documentation, and fraudulent marketing by the Defendants Hayward and Eyde during the Height's Period.

35.     The acts referenced herein were continuous, both because a series of related acts were committed which extended over a substantial period of time including and specifically during the Height's Period, and because there is the thread of continuity given that the predicate acts of racketeering were a regular way the individual Defendants Eyde and Hayward were conducting business and enjoying the benefits of the Heights Enterprise.

36.     Additionally, and also unbeknownst to property investors and Plaintiff, the Defendants Eyde and Hayward were engaging in a pattern and practice of illegal conduct calculated to inflate the market rent artificially at the Heights. This type of conduct included, but was not limited to engaging in insider deals, blocking additional development at the Heights, kickbacks and sweetheart construction contracts, all of which were designed to cause property

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com

Perrone Law

investors to pay and lending institutions to loan artificially high amounts of money for property and retail space at or near the Heights. Said conduct, along with the other conduct described herein, was committed on a regular and consistent basis during the Height's Period and comprised a significant part of the pattern of predicate acts committed during the operation of the Heights Enterprise.

## "PATTERN OF RACKETEERING ACTIVITY"

37.     As specific examples of the nature of said pattern of predicate acts of the racketeering activity attributable to the Defendants Eyde and Hayward, on account of their conduct as well as conduct of their agents or affiliates, the following wrongful acts were committed by said individuals and entities with regard to The Heights during the Height's Period:

38.     The Heights Enterprise has also been sued by other victims including **Walmart** and **Big Buck Brewery** in this United States District Court relating to this same pattern of conduct and such conduct is part of the same pattern of illegal conduct described *supra*. These Complaints detail portions of the same Heights Enterprise which caused significant economic losses to the Plaintiffs in those cases.

39.     On account of the wrongful conduct which was committed by or which is attributable to Hayward and Eyde, or any of their associated entities there was: (a) unreasonable **Construction** delay in leasing and continued development at the Heights; (b) lack of promoting new leases by failing to enlist the services of a real estate agent, entirely inconsistent with representations made to Plaintiff and other prospective targets.

## COUNTS 1-7
## (VIOLATIONS OF 18 U.S.C. § 1962-RICO)

40.     The allegations in paragraphs 1 through 39 are incorporated by reference.

41.     The Heights Enterprise is an Enterprise in which the Defendants Hayward and Eyde engaged in activities affected interstate commerce and they were employed by and/or associated with the Heights Enterprise at all relevant times during the Height's Period.

42.     The Defendants Hayward and Eyde agreed to and did conduct and participate in the conduct of the Heights Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and others.  Pursuant to and in

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



furtherance of their fraudulent scheme the Defendants Hayward and Eyde committed multiple related acts including, but not limited to: money laundering, wire fraud, financial institution fraud, and other predicate acts enumerated under 18 U.S.C. 1961(a).  This wrongful conduct was the legal and proximate cause of Plaintiff' injuries described *infra*.

43.     Throughout the duration of the Heights Enterprise, the Defendants Hayward and Eyde committed numerous acts of fraud to induce the Plaintiff and other property investors to lease property and invest in retail space at the Heights.

## *COUNT 1*
## *MAIL/WIRE FRAUD*
### U.S.C. § § 1341, 1343

44.     Plaintiff incorporates by reference paragraphs 1-44.

45.     In furtherance of the Heights Enterprise, the Defendants used the United States Postal Service ("**USPS**"), facsimile ("**Fax**"), and/or electronic communications ("**Email**") to send fraudulent information to Plaintiff and other parties. Hayward and Eyde and their employees and agents committed mail fraud by committing the following predicate acts of racketeering activity as part of a scheme to defraud, which resulted in a foreseeable injury to others, which acts are indictable under 18 U.S.C. § 1341, § 1343. ("**Mail Fraud**")

46.     The Mimi's Proposal, marketing materials and financial statements provided by Hayward regarding the Height's inflated financial condition sent in coordination for the processing of the Plaintiff' SBA Loan which contained materially false and/or misleading statements concerning the Heights financial condition, were sent via USPS, Fax, or Email by or at the direction of Hayward and Eyde to potential property investors.

47.     As part of the Heights Enterprise, land and Retail spaces were purchased, marketed and sold or leased at the Heights, including but not limited to the Height's Period, based in significant part on material and false representations regarding: (a) the nature and quality of the the Heights and its amenities; (b) the value of the individual retail spaces at the Heights; and (c) the value and financial condition of the Heights development. The material and false representations referenced were made by Hayward, for the benefit of the Heights Enterprise. These material and false statements were made by and said by Hayward regularly, repeatedly, and throughout the Height's Period, as part of a pattern and practice calculated to promote the Heights Enterprise.

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com

**Perrone Law**

48.   Such false statements were frequently made and frequently included by Hayward or various agents acting at his direction, which in turn were sent by said individuals to third parties through the USPS or via Fax or Email for the purposes of: **1)** artificially inflating market rent of similar retail spaces or future leases; **2)** artificially inflating the value of the Heights as a whole; 3) attracting investors from out of state; and **4)** artificially inflating the financial statements of the DDA and/or the various entities associated with the Heights Enterprise as stated herein. The conduct was calculated to induce property investors to pay (and lenders to lend) artificially high amounts of money for retail spaces at the Heights.

49.   On September 23, 2014 Defendant Hayward sent sample business plans to Margaret Sanders via email from his email in his capacity as the Executive Director of the DDA.

50.   On October 23, 2014 Hayward Sent an email to Sanders regarding meeting with an architect who was based out of Chicago to go over design idea for the retail space.

51.   On November 30, 2014, Hayward sent Sanders an email with a Commercial Space Retail Lease Proposal drafted by Hayward regarding the retail space at the Heights that included a Rent Schedule based on sales with $800,000.00 in sales resulting in Mimi's paying the "base rent".

52.   The acts and omissions comprising the pattern of illegal and improper conduct were the proximate and legal cause of significant damages and losses sustained by the property investors and lenders who had a significant financial stake in their retail space at the Heights. A few specific examples follow of the numerous predicate acts and omissions of the Defendants which were committed during the operation of the Heights Enterprise.

53.   Similarly, SBA Loan documents that included fraudulent projections provided by Hayward were mailed to agents of the United States government through USPS during the Height's Period which contained material and false statements regarding the nature and quality of the amenities at the Heights, the financial status of the development, and the nature and status of the developers of said projects. Such material and false statements were made in said SBA Loan documents by the Defendants in furtherance of the Heights Enterprise.

54.   Leasing and continued development at the Heights was being intentionally stalled and underfinanced at least since beginning 2015 after Mimi's signed the Lease. The Defendants, through several individuals who were acting for their collective benefit in furtherance of the Heights Enterprise, including but not limited to Hayward and Eyde, with their knowledge and consent, in some instances acting at their direction, regularly and repeatedly made material and false statements regarding the value of the retail space. Said individuals engaged in a pattern and

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



practice of making such material and false statements regarding the financial condition of the Heights and the value of the retail spaces during said time period for the purpose of artificially inflating the Heights project for the financial benefit of the Defendants herein.

55.    As part of attempting to inflate the value of the Heights, the Defendants, employees and agents, through the entities owned and controlled by the Defendants, for their mutual benefit, made and caused to be made misleading and deceptive representations as aforesaid during the Height's Period, on a regular and repeated basis, as a way of doing business at the Heights to inflate market rent and induce interstate sales. Ultimately, this induced Mimi's Sweet Shop to lease at the Heights at prices that could not be sustained, such that the values would inevitably crash, based on fraudulent misrepresentations which injured the Plaintiff and other retail tenants in a like position who signed leases at the Heights, including, as well as those who had invested in those developments (including Sanders). Further, misleading statements were made during said time period by said individuals regarding the true status of the financial stability of the Heights, the continually delayed projected completion date, and the Height's amenities.

56.    Plaintiff specifically pleads that contrary to the representations made by Hayward and the DDA regarding the Heights including Hayward's statements and Heights sales materials, on account of the wrongful conduct of the Defendants the Heights was in dire financial circumstances with no intention to provide additional amenities or increase foot traffic, development, or amenities at the time of signing the Lease.  Based upon information and belief, other individuals, including other rental tenants, lending institutions, and families also suffered financial losses and damages based on the wrongful conduct of the Heights Enterprise during relevant time periods.

57.    Defendant Hayward and other principals involved with the Heights repeatedly made false statements regarding Defendants' intentions to spend money to provide amenities such as advertising, signage, and promoting leasing, at the Heights (the "Incentives") throughout the Height's Period. Said individuals, specifically Hayward, repeatedly promised at all relevant times that the Incentives would be completed soon or tenants would be moved in, but simply had been delayed. These statements, as well as similar statements in relation to the SBA Loan Documents were material, false, and induced reliance on the part of the property investors including Plaintiff.

58.    Defendant Hayward failed to disclose to Plaintiff when the Lease was executed in July of 2015, that Tony Sacco's would be closing in November 2016. Plaintiff was not informed of this closure until October 31, 2016.   The withholding of Tony Sacco's information caused

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



Plaintiff financial harm. During the time period that both Tony Sacco's and Mimi's Sweet Shop were open, Mimi's benefitted from business at the Heights. When Tony Sacco's closed foot traffic and the businesses at the Heights decreased. If Plaintiff knew that businesses were closing at the Heights no loan would have been obtained or lease signed. This purposeful withholding of information caused Plaintiff economic damages.

59.     The Heights Enterprise was conducted to induce property investors and lenders to invest, lend, and/or maintain significant amounts of money and resources in the Heights, only to see significant portions of their investments misappropriated, converted, misused, and/or significantly devalued. In this manner, the individual Defendants acted in concert to obtain funds through the wrongful and fraudulent acts and omissions committed during the operation of the Heights Enterprise referenced herein. Such conduct was common, interconnected, and related through the conduct of the Defendants who caused economic injuries and losses to Plaintiff Mimi's Sweet Shop, as well as to others, including property investors and lenders.

60.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## *COUNT 2*
### *18 U.S.C. 1344 Financial Institution Fraud*
#### *Small Business Administration Loan*

61.     Plaintiff incorporates by reference paragraphs 1-60.

62.     SBA Loan documents that included fraudulent projections provided by Hayward were sent to the United States Small Business Administration during the Height's Period which contained material and false statements regarding the nature and quality of the amenities at the Heights, the financial status of the development, and the nature and status of the developers of said projects. Such material and false statements were made in said SBA Loan documents by the Defendants in furtherance of the Heights Enterprise.

63.     The actual financial condition of the DDA and the Heights was dire at all relevant time periods and subsequent to entering into the lease this became obvious when the DDA pledged unconditional repayment of $5,013,788.00 promissory note dated August 31, 2016, with Eyde as the creditor, the Towneast LLC's as the debtor and the DDA as the guarantor to plug the holes in the fraudulent accounting underlying the Heights.



Perrone Law

64.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## COUNT 3
### 18 U.S.C. 1951 "HOBBS ACT"
### Soft Construction Costs

65.     Plaintiff incorporates by reference paragraphs 1-64.

66.     After signing the Lease Hayward informed Sanders about the "soft" construction costs after closing and required Mimi's use Eyde's contractors and Mimi's Sweet Shop ended up paying an extra $112,307.36 for build out and Project Manager Costs in the amount of $17,719.00.

67.     Upon information, knowledge and belief Hayward received compensation from Eyde to require the construction contracts go to Eyde's contractors.

68.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## COUNT 4
### 18 U.S.C. 1951 "HOBBS ACT"
### Bar Louie

69.     Plaintiff incorporates by reference paragraphs 1-68.

70.     In August 2015, immediately after signing the Mimi's Lease Defendant Eyde, in breach of his various fiduciary duties through agreement, with Hayward's assistance unilaterally and without a commercially legitimate reason, arbitrarily vetoed a proposed lease for *Bar Louie Restaurant and Sports Bar* ("**Bar Louie**") that was supposed to open at the Heights. This stifled development resulting in decreased foot traffic at the Heights. Based upon information and belief, the Bar Louie's lease was being illegally vetoed by Defendants while Eyde was conspiring for *Boston's Restaurant and Sport's Bar* ("**Boston's**") to be located on land owned by Eastwood LLC instead of at the Heights in breach of their various fiduciary responsibilities. Bar Louie would have increased foot traffic as promised by the DDA through Hayward. Upon information, knowledge and belief Eastwood LLC and or Eyde unreasonably opposed the proposed Bar Louie lease to avoid competition so Eyde could develop Boston's outside of the Heights without competition. Further, Hayward was awarded a contract and served as the Project Manager for the construction of Boston's.

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com

Perrone Law

71.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## COUNT 5
### 18 U.S.C. 1951 "HOBBS ACT"
### 2015 Joint Venture Agreement

72.     Plaintiff incorporates by reference paragraphs 1-71.

73.     As part of the Enterprise, Defendant Hayward and the others took money and other consideration from Defendant Eyde. Further, In exchange for giving Defendant Eyde a controlling interest and veto power in the Heights through the Joint Venture Agreement, Defendant Hayward received a position as a paid-consultant for Eyde.  In exchange for this consideration, Defendant Hayward drafted the Joint Venture Agreement and signed it without board approval. This illegal delegation of authority by the DDA allowed Eyde to control which businesses occupied the Heights and gave Eyde control over other aspects of DDA business.

74.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## COUNT 6
### Money Laundering
### 18 U.S.C. § 1956

75.     Plaintiff incorporates by reference paragraphs 1-74.

76.     As part of the Enterprise, Defendant Hayward diverted project funds through Jason Aten by pushing through internet marketing contracts to compensate for Susan Aten's support of the project at its inception.  Upon information, knowledge and belief Hayward diverted project funds to preferential contractors as an agent of Eyde.

77.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## COUNT 7
### CONTROL

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



*18 U.S.C. §1962(B)*

78.      The allegations in paragraphs 1 through 77 are incorporated by reference.

79.      The Heights Enterprise defined in the Complaint affected interstate commerce. Plaintiff specifically pleads that Defendants acquired and maintained interests in and control of the Heights Enterprise described above through a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).  Further in the manner set forth above, Defendants have directly and indirectly acquired and maintained interests in and control of the Heights Enterprise through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(B).

80.      As a direct and proximate result of the Defendants' racketeering activities, Plaintiff' have been injured as described herein.

81.      Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra.*

# COUNT 8
## ILLEGAL DELEGATION OF AUTHORITY
### Michigan Constitution

82.      Plaintiff incorporates by reference paragraphs 1- 82.

83.      The Joint Venture Agreement delegated the DDA's authority to make final decisions on leases and contracts.  The delegation from the DDA to Eastwood, LLC and Eyde is improper under Michigan law because the Joint Venture Agreement that grants the delegations gives Eastwood LLC and Eyde power to override lease agreements the DDA created with third parties and this absolute and unchecked delegation of authority is unconstitutional, see *Blue Cross Blue Shield v. Millikin,* 422 Mich. 1 (1985).

84.      The Joint Venture Agreement was and continues to be an illegal delegation of duty leading to bad faith denials of otherwise commercially reasonable projects resulting in unreasonable restraints on trade and anti-competition at the Heights**.** The Joint Venture Agreement illegally granted Defendant Eyde through Towneast a "veto power" over all projects in the Heights and allowed Hayward acting for Eyde to delay the construction projects.  The illegal delegation by the DDA caused economic hardship to Plaintiff because the Defendants were self-dealing in their actions over the course of the Heights Enterprise and facilitating projects that they would personally benefit from.

85.      The damage to the Plaintiff is greater than the court's jurisdictional amount of

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com



$75,000.

## *COUNT 9*
### *Civil CONSPIRACY*
### *18 U.S.C. §1962(D)*

86.      The allegations of paragraphs 1 through 85 are incorporated by reference.

87.      As set forth above, the 1962(d) Eyde and Hayward agreed and conspired to violate 18 U.S.C. § 1962 (b) and (c).  Defendants intentionally conspired and agreed to directly and indirectly use or invest income that is derived from the pattern of racketeering activity described above, which was an interstate Heights Enterprise.

88.      Defendants Eyde and Hayward acquired and/or maintained interests in the Heights Enterprise through a pattern of racketeering activity, and conducted and participated in the conduct of the Heights Enterprise's affairs through a pattern of racketeering activity.  The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to commit these acts in furtherance of the Heights Enterprise.  Accordingly, based on the acts and omissions referenced above, the Defendants' conduct starting in 2011 to present, constitutes conspiracy to violate 18 U.S.C. § 1962 (b) and (c), in violation of 18 U.S.C. § 1962(d).

89.      For purposes of this section, each of the Defendants knowingly agreed to facilitate others, to operate or to manage the Heights Enterprise.  As the direct and proximate result of Defendants' conduct, Plaintiff suffered the injuries and losses referenced herein.

90.      Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## *COUNT 10*
### *BREACH OF CONTRACT*
### *COMMON LAW*

91.      Plaintiff incorporates by reference paragraphs 1 through 90.

92.      The Lease was intended to lease commercial retail space at the Heights with Mimi's Sweet Shop to conduct its business beginning in May 2016. Hayward, on behalf of the DDA promised Plaintiff financial assistance with advertising, putting up wayfinding signs and signs on Lake Lansing Road surrounding the Towne Center to advertise the businesses at the Heights.

93.      The DDA violated and breached the Lease as a result of its illegal delegation

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com


Perrone Law

Page **19** of 23

of its authority and responsibilities to Eastwood LLC and Defendant Eyde through Eastwood and/or Towneast, which had the direct effect of stifling development at the heights. During May and June 2016 DDA put up two (2) electric signs which helped increase business. The DDA only had the signs up for two (2) months and when they were removed at the end of June 2016, business declined substantially. The DDA by breaching the Lease caused financial losses and reputation to Mimi's Sweet Shop.

94.     The intent of the parties was for the DDA to assist Plaintiff's business in growing and developing as demonstrated in the language of the lease. Article 3, Section 3.lg of the contract states, "Tenant will provide Landlord annually twenty (20) $40 dollar gift coupons/cards ("Promotional items"). Landlord tends to use the Promotional items to build brand awareness of the Heights, Mimi's Sweet Shop Inc. and the Township. Annually, the Landlord will provide Tenant with an accounting of where the Promotional Items were distributed/leveraged along with a request for the next years Promotional Items. Any unused Promotional Items will be deducted from the next annual twenty (20) Promotional Items."

95.     Defendants Hayward and the DDA failed to assist and promote the Plaintiff's business at the Heights and is a common law breach of contract.

96.     Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## <u>COUNT 11</u>
### BREACH OF CONTRACT
### GOOD FAITH

97.     Plaintiff incorporates by reference paragraphs 1- through  96.

98.     Plaintiff, at all times pertinent hereto was entitled to the rights, privileges and benefits contained in the Lease. An implied covenant of good faith and fair dealing exists by virtue of the Lease and the DDA was obligated not to act in any way which had the effect of destroying or injuring the right of the Plaintiff to receive the benefits of their contract. ("**Good Faith**")

99.     Further, the covenant of good faith implied in the contract between the DDA and the Plaintiff required that the Plaintiff be fairly treated, and that Plaintiff could reasonably expect to be treated the same as other similarly situated lease holders of the DDA. By treating Plaintiff in an arbitrary and capricious manner as described in this Complaint the DDA breached this covenant of good faith implied within the Lease. When the DDA signed the Joint Venture

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



Agreement, the DDA specifically allowed Eastwood to interfere with development at the Heights by systematically stopping leasing and developing efforts and Mimi's Sweet Shop suffered significant damages as articulated *infra*.

100.    Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

## COUNT 12
### INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP COMMON LAW

101.    The Plaintiff incorporates by reference paragraphs 1 through 101.

102.    The Lease existed between the DDA and Plaintiff as of July 28, 2015 and Mimi's Sweet Shop was entitled to the rights, privileges and benefits of the Lease at all times pertinent hereto.  The Defendants Hayward and the DDA had knowledge of the Lease because Hayward negotiated it, the DDA approved it May 2015.

103.    The Defendants, specifically Eyde and Hayward, demonstrated by acts and words that it was their intention to interfere with Plaintiff's rights in the Lease.  This intentional interference affected Plaintiff's prospective economic growth.  Eyde breached and violated this duty to the Plaintiff in these ways: **1)** Illegal blocking of future development; **2)** vetoing any future projects; **3)** By taking action adverse to Plaintiff; **4)** By constantly, continually and unreasonably interfering with Plaintiff contract with the DDA.

104.    Plaintiff suffered damages because of Defendants actions in an amount in excess of $75,000.00 as more particularly described *supra*.

.

## PLAINTIFF' DAMAGES

105.    Plaintiff incorporates by reference paragraphs 1- 104.

106.    Plaintiff have standing to bring these claims because, as described more fully *infra* and *supra*, Plaintiff is a corporate person who has sustained injury to its business or property proximately caused by the Defendants' conduct.  More specifically, Plaintiff was among the prospective property investors who signed leases and suffered significant financial harm and losses. Because the Defendants are directly responsible for losses suffered by Plaintiff, each is liable to Plaintiff for **treble** the amount of Plaintiff's losses and attorneys' fees as permitted by law.

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax: 517.913.6287 § jacob@perronelawpc.com



107.    As a direct and proximate result of the wrongful and illegal conduct which was committed by or attributable to Defendants based on the facts above, Plaintiff suffered damages for unnecessary construction costs in the amount of approximately $293,990.00.  Further, the Plaintiff lost an additional $165,800.00 in the operation of Mimi's Sweet Shop. Plaintiff's lost investment totals approximately $459,790.00 minus the negligible cost of remaining equipment.

108.    Plaintiff specifically pleads that the wrongful conduct described herein, are predicate acts which are part of the same pattern of misrepresentations, co-mingling of funds, conversion, fraudulent transactions, insider dealings, and improper schemes to inflate market the value of retail space at the Heights.

109.    As a direct and proximate result of said wrongful and fraudulent conduct which was committed by and/or which is attributable to the Defendants, Plaintiff have suffered economic damages and losses.  Plaintiff's losses and injuries include, but are not limited to the following, which occurred during the Height's Period:

    a.    lost income from the lack of leasing within the Heights which were not reported or disclosed to Plaintiff;

    b.    lost income because of the transactions referenced above and losses caused by lack of development at the heights caused by the conduct referenced above;

    c.    lost profits because the insider transactions referenced above; and losses because of the downward spiral of market rents caused by the conduct referenced above.

110.    Due to the wrongful and fraudulent conduct of Defendants, Plaintiff should be awarded treble damages to be fully compensated for the wrongs committed by Defendants against them.  Under applicable federal and state laws, Plaintiff is requesting this Honorable Court to multiply Plaintiff's damages by at least three or another multiple as determined by this Honorable Court.

111.    Additionally, the Defendants' actions caused Plaintiff hundreds of thousands of dollars in lost investment and profits and the amount in controversy exceeds the Court's jurisdictional amount in controversy of $75,000.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court or Jury award Plaintiff: **1)** any and all actual damages the Court or Jury deems appropriate be awarded against Defendants; **2)** any and all punitive damages the Court or Jury deems appropriate be awarded against the Defendants; **3)** any and all treble damages the Court or Jury deems appropriate to be

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com



awarded against Defendants; **4)** Any and all costs, interest, and actual attorney's fees that are permitted by statute or court rule be awarded against Defendants; and **5)** any and all other damages the Court or Jury deems appropriate be awarded against Defendants.

Respectfully submitted,

Dated: September 12, 2018                    /s/Jacob A. Perrone
                                            JACOB A. PERRONE (MICH NO. P71915)
                                            Attorney for Plaintiff
                                            221 W. Lake Lansing Rd., Ste 200
                                            East Lansing, MI 48823
                                            (517) 351-0332

Perrone Law, P.C. § 221 West Lake Lansing Road, Suite 200, East Lansing, Michigan 48823 § Phone: 517.351.0332 § Fax. 517.913.6287 § jacob@perronelawpc.com