# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

**MIMI'S SWEET SHOP, INC. ®,**     *DOCKET NO. 1:18-CV-00337-JTN*
                                   *HON. JANET T. NEFF*
    PLAINTIFFS,

VS.

**CHARTER TOWNSHIP OF LANSING DOWNTOWN DEVELOPMENT AUTHORITY,**
**STEVEN L. HAYWARD,**
**MICHAEL G. EYDE,**
**EASTWOOD, LLC,**
**TOWNEAST, LLC,**
**TOWNEAST PARKING LLC,**

    **Defendants.**

_____/

| | |
|---|---|
| **PERRONE LAW, P.C.**<br>Jacob A. Perrone (Mich Bar No. 71915)<br>*Attorney for Plaintiff*<br>221 W. Lake Lansing Rd. Ste. 200<br>East Lansing, MI 48823<br>(517) 351-0332<br>jacob@perronelawpc.com | Craig R. Noland (P30717)<br>Amanda M. Zdarsky (P81443)<br>Attorneys for Defendant Hayward<br>300 Ottawa Avenue, N.W., Suite 820<br>Grand Rapids, MI 49503<br>(616)288-3700/Fax (616) 214-7712<br>cnoland@mcgrawmorris.com<br>azdarsky@mcgrawmorris.com |
| Michael F. Matheson (P52997)<br>MATTHESON LAW FIRM<br>Attorneys for Defendants Eyde, Eastwood LLC,<br>Towneast LLC, and Towneast Parking LLC<br>200 Woodland Pass, Suite F<br>East Lansing, MI 48823<br>(517) 993-6699<br>michael@mathesonlawfirm.com | Thomas R. Meagher (P32959)<br>FOSTER SWIFT COLLINS & SMITH PC<br>Attorneys for Defendant Charter Township of<br>Lansing Downtown Development Authority<br>313 Washington Square<br>Lansing, MI 48933<br>(517) 371-8100<br>tmeagher@fosterswift.com |

**BRIEF IN SUPPORT OF EXERCISE SUPPLEMENTAL JURISDICTION**



Page **1** of **7**

NOW COMES Plaintiff, Mimi's Sweet Shop , ("Hannon") by and through his attorney, Jacob A. Perrone and moves this Court to to Exercise Supplemental Jurisdiction. Defendant submits this Brief in Support of the Exercise of Supplemental Jurisdiction.

## I.  *STATEMENT OF PERTINENT FACTS AND ALLEGATIONS*

Hayward, as Executive Director of the DDA, began aggressively approaching Margaret Sanders to become a retail tenant at the Heights with an idea to open an ice cream and candy shop at the Heights beginning as early as September, 23, 2014. On November 30, 2014 Hayward sent Sanders a Commercial Space Retail Lease Proposal ("**Mimi's Proposal**") that created the appearance that Sanders could expect revenues of $80,000.00 per month and promising maximum signage and occupancy. The Heights was in dire need of leases to be signed for the vacant retail space under the parking garage and desperately sought out commercial retail tenants. Sanders formed Mimi's Sweet Shop and applied for a loan through the Small Business Administration. Mimi's Sweet Shop received a loan for $234,800.00 and line of credit for credit card up to $10,000.00 from Huntington Bank for the startup and operating costs with personal Guarantees. ("**SBA Loan**")

Sanders eventually signed a Lease on behalf of Mimi's Sweet Shop to become a retail tenant at the Heights on July 28, 2015. ("**Lease**") It was represented to her that original construction costs were anticipated to be $175,000 and the DDA agreed to contribute $70,000 of that amount. Mimi's Sweet Shop's total anticipated construction costs was $105,000. Sanders applied for a loan through the Small Business Administration ("SBA") based on information and belief that she received from Hayward that this would be a viable and successful business in the Heights at Eastwood. It was represented to her by Hayward that the approximate cost to build the space would be about $175,000. The DDA would cover the cost of preparing the "White Box" to facilitate the build-out for Mimi's Sweet Shop. The DDA's cost for the "White Box" as reported to bank was $96,600.00. The final cost for plaintiff after accounting for "soft" construction costs required by Hayward was $293,990.00.

During the period between January 28, 2015 and the eventual Lease signing on July 28, 2015 there were a number of significant dates to the negotiations and underlying SBA



Loan application process for the Lease and subsequent to execution and eventual approval where Hayward made numerous "guarantees", promises, and/or representations to induce Plaintiff to lease retail space at the Heights: **1)** Mimi's Sweet Shop would gross ***"at least"*** *$400,000.00 to $500,000.00* per year when the retail spaces at the Heights were fully leased.; **2)** the Heights would be fully leased by May 2016 prior to the opening of Mimi's sweet shop although Hayward knew and failed to disclose that Tony Sacco's Pizza Parlor ("**Tony Saccos**") would be closing before signing the Lease; **3)** Mimi's Sweet Shop's total construction costs "would be $105,000" until she was informed of the additional costs by Hayward including, but not limited to the costs included to hire a construction manager, final equipment purchases, additional electrical work and advertising; **4)** Hayward knew and failed to disclose that Eyde was going to veto Bar Louie's Lease at the Heights and construct Boston's Restaurant away from the Heights; **5)** Hayward was negotiating the Lease at the same time in 2015 that he was negotiating the Joint Venture Agreement between Eyde, Eastwood, and the DDA; **6)** Hayward and the DDA have repeatedly stated they are "seeking people that want the walkable urban experience."

On or about April 22, 2015 Hayward signed an agreement on behalf of the DDA with Eastwood without a board vote. Eastwood LLC was classified as the Class B Partner and the DDA as the Class A Partner that included a financial interest for Eastwood in the public project and separated the parking garage from the retail spaces in Towneast Parking, LLC and Towneast, LLC respectively. The Joint Venture Agreement gave Eastwood veto power over almost all major decisions at the Heights including, but not limited to: 1) hiring and firing contractors, 2) leasing, 3) marketing, and 4) contracting for the Heights. On October 26, 2016 the Joint Venture Agreement was approved by the DDA Board affording Eastwood and Eyde virtually absolute control of the Heights and additional financial incentives associated with his "membership interest" in the Heights. ("**Joint Venture Agreement**")

The Heights' 88,000 square feet of commercial space has never achieved even 30% occupancy. The actual financial condition of the DDA at all relevant times was dire and the DDA pledged unconditional repayment of a $5,013,788 promissory note dated August 31, 2016, with Eyde as the creditor, the Towneast LLC's as the debtor and the DDA as the guarantor to plug the holes in the fraudulent accounting underlying the Heights. As a result,

funds for developing the Heights needed to support advertising, develop foot traffic, and maintain appropriate capitalization were diverted away from the Heights.

### A.    Standard of Review

**28 USCS § 1367 Supplemental Jurisdiction**
**(a)**  Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are **so related to claims in the action within such original jurisdiction that they form part of the same case or controversy** under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

""

**(c)**  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
   **(1)**  the claim raises a novel or complex issue of State law,
   **(2)**  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
   **(3)**  the district court has dismissed all claims over which it has original jurisdiction, or
   **(4)**  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

### B.    This Court should exercise supplemental jurisdiction because the claims are so related that they form part of the same case or controversy and it is in the interest of Judicial Economy to avoid a concurrent state law claims against the same Defendants.

Pendent jurisdiction exists whenever there is a claim "'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' *U.S. Const.*, Art. III, § 2, and the relationship between that claim and the pendent state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). *HN2* The three prerequisites for the existence of

pendent jurisdiction are (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. *Id.* The Supreme Court has also indicated, however, that pendent jurisdiction is a doctrine of discretion whose justification lies in "considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726. A district court with pendent jurisdiction should normally dismiss state claims without prejudice when "it appears that the state issues substantially predominate, . . ." *Id.* a federal claim should be deemed insubstantial "only if the prior decisions inescapably render the claims frivolous; previous decisions which render claims of doubtful or questionable merit do not render them insubstantial . . ." *Hagans v. Lavine*, 415 U.S. 528, 537-38, 39 L. Ed. 2d 577, 94 S. Ct. 1372 (1974). Supplemental jurisdiction under 28 U.S.C. § 1367 "allows a plaintiff to include claims over which a federal court would not normally have jurisdiction." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005)

In *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank*, 738 F.2d 163 (6th Cir. 1984) the plaintiff sued based on the banks failure to follow federal collateral registration requirements regarding loan and security agreements when the bank foreclosed on the stock security agreements after a series. The Court granted defendant's motion to dismiss plaintiff's federal claims and the Court allowed the case to continue on the state causes of action. The Court held the decision to hear the pendent state claims was fully justified based upon considerations of judicial economy, convenience and fairness to litigants and found that the claims were substantial federal claims.

The Court reasoned that the banks failure to file the required form commenced the process whereby the bank acquired plaintiff's stock and later sold it when plaintiff defaulted on his loan obligations. The Court further reasoned that the plaintiffs were entitled to bring the action in federal court.

The instant case is more substantial than *Transcontinental Leasing* case as the plaintiffs 18 USC §1962 and associated "pattern of racketeering activity" claims are significant and form the basis for the Plaintiff's financial losses. The predicate acts all caused a decline in the Plaintiff's business resulting in lost profits and lost investment. The illegal veto of the Bar Louie lease caused a significant loss in potential foot traffic and added development that would have resulted in more profitability for Mimi's. Further, the Defendant's diversion of funds from the project caused loss amenities and signage that would have improved the profitability of Mimi's. Most importantly, the project was federally bonded and funds received were misappropriated by Hayward, acting as executive director of the DDA and Eyde acting as the private developer for the project.

In the instant case it is clear that the state and federal claims derive from a common nucleus of operative fact. The lease underlying the breach of contract claims is the beginning of Plaintiff's involvement in the Heights project. The fraudulent negotiations underlying the lease constitute the mail and wire fraud counts. The facts underlying the Defendants' involvement in the joint venture that constitutes a violation of the Hobbes Act forms the same facts underlying the illegal delegation of authority and third- party interference state law claims. The instant state and federal claims therefore derive from a common nucleus of operative fact.

Further, the Plaintiffs claim in the instant matter would ordinarily be expected to be tried in one judicial proceeding. If the Court decides to refrain from exercising supplemental jurisdiction on the state law claims it will necessitate a duplicate proceeding in state court that would be inconvenient and unfair to the litigants. The Plaintiff would be forced to prosecute the same case in two different courts with the same facts against a government agent with more significant resources. The facts in this case favor exercising supplemental jurisdiction

## II. CONCLUSION

Mimi's respectfully requests this Honorable Court to grant Defendant's Motion to Exercise Supplemental Jurisdiction for the reasons stated herein. The Plaintiff's state law claims do not substantially predominate over the 18 USC §1962 for which the district court has original jurisdiction and no exceptional circumstances exist to compel this Court to decline jurisdiction.

Respectfully submitted,

Dated: September 12, 2018         /s/Jacob A. Perrone
                                  JACOB A. PERRONE (P71915)
                                  Attorney for Plaintiff
                                  221 W. Lake Lansing Rd., Ste. 200
                                  East Lansing, MI 48823
                                  (517) 351-0332

