1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF MICHIGAN

3                SOUTHERN DIVISION

4    MIMI'S SWEET SHOP, INC.,

5        Plaintiff,              No.  1:18cv337

6    vs.

7    CHARTER TOWNSHIP OF LANSING
     DOWNTOWN DEVELOPMENT AUTHORITY, ET AL.,

8
         Defendants.

9

10   Before:

11                  THE HONORABLE JANET NEFF,
                     U.S. District Judge
12                   Grand Rapids, Michigan
                     Monday, August 13, 2018
13                Premotion Conference Proceedings

14   APPEARANCES:
                 Perrone Law, P.C.
15               MR. JACOB PERRONE
                 221 W. Lake Lansing Rd.
16               East Lansing, MI 48823
                 517-315-0332
17                    On behalf of the Plaintiff;
                 McGraw Morris
18               MR. CRAIG R. NOLAND
                 300 Ottawa Avenue NW
19               Suite 820
                 Grand Rapids, MI 49503
20               616-288-3700
                      On behalf of Steven Hayward,
21
                 MR. THOMAS MEAGHER
22               MS. ALLISON MARIE COLLINS
                 Foster Swift Collins & Smith
23               313 S. Washington Sq.
                 Lansing, MI  48933
24               517-371-8161
                      On behalf of Lansing DDA, et al.,
25

```
 1                    MR. MICHAEL F. MATHESON
                 Matheson Law Firm
 2               200 Woodland Pass, Suite F
                 East Lansing, MI  48823
 3               517-933-48823
                          On behalf of Towneast LLC, et al.
 4

 5

 6

 7

 8
             REPORTED BY:  MS. KATHY J. ANDERSON, RPR, FCRR
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       August 13, 2018

2       PROCEEDINGS, 1:25 p.m.

3       THE COURT:  Okay.  This is the date and time set for a

4   premotion conference in case number 1:18cv337, Mimi's Sweet

5   Shop versus Lansing Township, Downtown Development Authority,

6   et al.  Counsel, would you please put your appearances on the

7   record for me.

8       MR. PERRONE:  Jacob Perrone on behalf of Mimi's Sweet

9   Shop.

10      MR. NOLAND:  Craig Noland on behalf of Steven Hayward.

11      MR. MEAGHER:  Tom Meagher for Lansing Downtown

12   Development Authority.

13      MS. COLLINS:  Allison Collins for Lansing Downtown

14   Development Authority.

15      MR. MATHESON:  And Michael Matheson on behalf of

16   Towneast, LLC, Towneast Parking, LLC, Eastwood, LLC and Michael

17   Eyde.

18      THE COURT:  Okay.  The first thing I want to talk to

19   you about, this may be a little upside down, but I am going to

20   decline supplemental jurisdiction over any state law claims.

21   Now, if you have really strong objections to that, you're going

22   to have to brief the issue as to why I should maintain that

23   jurisdiction.

24      The second thing is honestly I found this case a

25   little bit confusing.  With all of these counts --  I'll tell

1    you honestly, whenever I see a case that seems relatively

2    simple but is pled in 11 different counts, I have a form of

3    radar that goes up that says there's something not right here.

4         This seems like a fairly straightforward contract

5    case, and yet we have RICO civil conspiracy.  It just seems

6    very unnecessarily complex because I don't think it is complex.

7         There's also the plaintiff's responses are long,

8    longer than my guidelines provide.  They are wordy, and I would

9    have to say that if the remaining pleadings I see are as

10   unnecessarily wordy as the seven-page single spaced response,

11   there's a good chance they will be stricken.

12        What else?  There was something else I wanted to say.

13        Oh, I think to some extent there may be a fundamental

14   misunderstanding of what a 12(b)(6) motion is all about because

15   there's a discussion of discovery.  There isn't any discovery

16   in a 12(b)(6) motion.  They are resolved on the pleadings.  And

17   with the decisions that the Supreme Court issued, I don't know,

18   five years or so ago in Iqbal and Twombly, there's a relatively

19   high bar, in some instances I think a little bit unfairly, but

20   nevertheless, those are the rules we have to follow.

21        So why don't we start with the --  another question I

22   had somewhere I seem to remember that the illegal delegation of

23   authority was intended to be pled under 1983, is that right?

24        MR. PERRONE:  Correct.  It just was not specified.

25        THE COURT:  It just wasn't what?

1          MR. PERRONE:  I didn't include the citation under the

2    heading.  That was my omission.

3          THE COURT:  Well, I have a hard time seeing how you

4    get there.  But nevertheless, let's start with the Township of

5    Lansing and the DDA request for the right to file a 12(b)(6)

6    motion.  Hello.

7          MR. MEAGHER:  Well, Judge, I wasn't sure if that meant

8    it's on me.

9          We believe that none of the causes of action state a

10   claim.  The RICO claims we believe could not even be asserted

11   against the DDA as a governmental entity.  Even if they could,

12   we don't think there are predicate acts pled.  We don't think

13   the other elements of the RICO claim are properly pled.

14         We have listed our response to each of the causes of

15   action, and in each case we find it very difficult, I'm not

16   saying this in any particular way, but I find it difficult to

17   respond to the pleading because so many of the paragraphs, so

18   many of the allegations have multiple sentences.  For example,

19   leaving the form to the side, I don't think that any of the

20   criminal statutes could apply.  Again, because there's no

21   intent on the part of the DDA.  The several criminal statutes

22   are not proper predicate acts for a RICO claim.  Several of the

23   criminal statutes don't provide for a private cause of action

24   so there's no stand alone basis for those to be pursued.

25         You've already taken care of supplemental jurisdiction

1     for us.

2              One of the acts under the Interstate Land - help me

3     out here - Sales Act claim, that's not proper because we are

4     talking about a lease within a building, we are not talking

5     about the real estate.  So I don't think that claim could be

6     pursued.

7              We don't see proper allegations for an antitrust

8     claim.

9              And I'm not sure if that covers all the claims, Judge,

10    but we tried to specify why each of the claims we believe are

11    insufficient as pled.

12             THE COURT:  Well, as we know, Mr. Perrone, civil RICO

13    claims are very, very difficult to pursue, tend to be pretty

14    expensive to pursue as well.  So I would like to hear your

15    responses to what sounds like a pretty carefully thought out

16    motion.

17             MR. PERRONE:  Again, as it relates to the DDA, I think

18    supplemental jurisdiction would be appropriate given their

19    intimate relationship with the players in the RICO case.  And

20    what we have is a case where you have multiple individuals that

21    are controlling the pools of funds and the marketing and

22    leasing at this project.  They will try to minimize it as just

23    a contract dispute, but it was the outside activities that

24    constituted the RICO.

25             You had promises that were made to numerous

1    individuals as far as the development, and the development was

2    never followed through on.  It was in the process procedurally

3    delayed by these numerous individuals that were involved,

4    various entities.  As to their actions in blocking

5    administratively they were all memorialized in a specific

6    agreement.  If you look at the agreements, the agreement for

7    the Towneast in and of itself was a public/private partnership

8    that exceeded its authority and allowed for the private

9    individuals in this case to act in concert in various manners,

10   one of which was delaying construction projects to delay

11   development, the other was hand picking who got certain

12   construction.

13          THE COURT:  What's the enterprise?

14          MR. PERRONE:  The enterprise is the entire project.

15   The enterprise is the people that are affiliated with it.  The

16   enterprise comes down to the influence, the people that were

17   influencing the DDA, that turned the faucet on for the funds

18   for the project in and of itself.

19          THE COURT:  How do you respond to the arguments that

20   are made with regard to the criminal statutes which don't

21   appear to provide for a civil remedy?

22          MR. PERRONE:  He is saying that the DDA can't be found

23   guilty of the criminal statutes because of the intent.

24          THE COURT:  Well, he's also saying that there are

25   several criminal statutes that you've pled which do not provide

1    you with a civil cause of action.

2          MR. PERRONE:  As far as the Land Sales Act, that is

3    something that it appears he would be correct on.

4          THE COURT:  Are you withdrawing that claim?

5          MR. PERRONE:  Yes.

6          THE COURT:  Fair enough.  Progress is made.  Okay.  Go

7    ahead.

8          MR. PERRONE:  In regards to the RICO claims, I think

9    that they are adequately pled with the facts as stated in the

10   complaint.

11         It establishes a pattern of racketeering activity,

12   numerous predicate acts.

13         The Sherman Price Fixing Act, I withdraw that claim

14   also.

15         THE COURT:  Say that again, please.

16         MR. PERRONE:  The Sherman Price Fixing Act, I withdraw

17   that claim.

18         THE COURT:  Okay.  That leaves six causes of action.

19         MR. PERRONE:  Those are the remaining RICO, that make

20   up the RICO claims.

21         THE COURT:  Four of them are RICO, one is control,

22   which I don't quite understand, and the last one is a civil

23   conspiracy.  Rita, what questions do you have?

24         THE LAW CLERK:  I just want to make sure we are on the

25   same page.  So Counts 1 through 4 are your RICO claims.

1          MR. PERRONE:  Yes.

2          THE LAW CLERK:  Okay.  And not Count 7 and 8, is that

3  correct?  Sometimes I feel like you're lumping them together.

4          MR. PERRONE:  Yes.

5          THE LAW CLERK:  So four RICO claims and two other

6  federal claims.

7          MR. PERRONE:  Correct.

8          THE LAW CLERK:  Okay.

9          THE COURT:  Okay.  Anything else with regard to the

10  DDA?

11          THE LAW CLERK:  May I ask one more question?

12          THE COURT:  Sure.  Absolutely.

13          THE LAW CLERK:  So Count 1 is RICO and 1983 or can you

14  clarify that for me?

15          MR. PERRONE:  Count 1, yes, I was trying to use

16  multiple causes of action with the illegal delegation of duty

17  as one of the instances of pattern of racketeering.  The

18  agreement in and of itself was an instance.  That was obtained

19  through color of right.

20          THE COURT:  Mr. Meagher, any response?

21          MR. MEAGHER:  Not right now, Your Honor, thank you.

22          THE COURT:  All right.  Let's hear from Hayward.

23          MR. NOLAND:  Just to kind of echo what Mr. Meagher had

24  said, three major points I guess or general points.

25          One is I had the same kind of reaction when I looked

1   at the complaint, again, tried to digest what's the gravamen of

2   the claim, what really operates as the damages or the harm or

3   the wrong.

4           You know, we have a lease agreement that was signed.

5   It's very detailed.  And so I guess at first blush I had a kind

6   of similar, like wait a minute, why are we in federal court.

7           And I'll confess, Judge, I do not -- my experience

8   with RICO is somewhat limited.  We have put together, you know,

9   a draft brief, and what we are focusing on is to navigate

10  factual allegations specific to our client versus generalized

11  conclusory allegations which, you know, under the standard for

12  even a Rule 12(b)(6) does not suffice.

13          And one thing that jumped out at me in reading the

14  complaint on the first page I think of the complaint is that an

15  allegation that Mr. Hayward is being sued in his official

16  capacity acting on behalf of the DDA.  And if we are now, and I

17  guess I wasn't -- I didn't pick up on the idea that we are

18  dealing with a 1983 claim.  But even if we are, you know, we

19  have, I guess I have a question as to whether or not

20  Mr. Hayward is being sued in his official capacity on that type

21  of claim or individual capacity.  It's something I didn't even

22  think about.  But I think it's something that would be helpful

23  moving forward.

24          So and I know there was reference to amending the

25  complaint, discovery.  I don't, I think based on these

1    pleadings, it's challenging because of the form; the fact we

2    have got multiple players, moving parts, kind of paragraph

3    allegations.  It would be tempting to ask the Court if we are

4    moving forward to have plaintiff amend the complaint to track,

5    you know, each defendant and each theory and operative facts.

6    But given -- that's more of a form issue.

7         THE COURT:  Well, actually it really, it's a

8    substantive issue as well.  Because you're right, I think at

9    least when Rita and I discussed this and I read the complaint,

10   I had the same sense of there's no real direction here.

11   There's no real organization.  And particularly when you have

12   multiple defendants like this, it's very, very difficult to

13   understand.

14        So, Mr. Perrone, why don't you sort of jump in right

15   there.

16        MR. PERRONE:  I can definitely amend so it is a little

17   bit easier to read and the operative facts point out a little

18   bit more as far as the individual specific instances where the

19   RICO predicates occurred, one of which was the Bar Louie, I

20   tried in setting it up initially to organize it in a way that

21   broke it down as simply as possible given the complexity of

22   dealing with RICO, but I would be open to amend just to try to

23   articulate a little bit better to allow them to respond

24   appropriately.

25        THE COURT:  Rita, what questions do you have with

1    regard to Mr. Hayward?

2           THE LAW CLERK:  I think his name is spelled

3    incorrectly too.

4           MR. NOLAND:  Yes, the middle initial is wrong.

5           THE LAW CLERK:  We want to make sure we have the

6    right --

7           MR. NOLAND:  The caption has it as Steven M., it's

8    actually Steven L.

9           THE COURT:  Let's make sure when the amended complaint

10   is filed that it is properly designated, please.

11          THE LAW CLERK:  And I think, Judge Neff, you may --  I

12   believe, Mr. Perrone, you also mentioned the possibility of

13   adding other defendants or other claims.  You may --

14          MR. PERRONE:  Correct.  I've been --

15          THE LAW CLERK:  I'm not sure if that is what we are

16   talking about for a second amended complaint so you may want to

17   clarify that.

18          MR. PERRONE:  I have been contacted by some other

19   individuals associated with the project who have some interest

20   in potentially involving themselves in the same litigation.  I

21   also had a little bit of information that may supplement in an

22   amended complaint.  And that may or may not include adding the

23   parties that I have discussed the situation with.

24          THE COURT:  How long are you going to take?  How long

25   is it going to take you to figure that all out?

1           MR. PERRONE:  I could get it turned around in 30 days.

2           THE COURT:  Okay.  Anything else, Rita?

3           THE LAW CLERK:  Only if you get up to a briefing

4      schedule, leave me a spot to talk about my concerns.

5           THE COURT:  I don't think we are going to get that far

6      today.  Okay.  The remaining defendants.  Mr. Matheson.

7           MR. MATHESON:  Thank you.  Again, I would echo my

8      colleagues's comments regarding what I feel as though I'm kind

9      of grasping in thin air here to decipher what claims are

10     actually asserted against my clients, and there is four of them

11     at this point, and that may change down the road.  But I can't

12     even make an assessment of where these claims are currently

13     situated without the identification of whether it's Towneast,

14     what involvement is Towneast Parking, LLC and these other

15     entities.

16          Mr. Perrone is sitting across the table from me, so

17     with all due respect, I mean it just seems to be all over the

18     place.  And we have still got this Count 7 that's dropped in

19     with control.  And is that part of the RICO claim?  I mean I

20     heard Counts 1 through 4 are RICO but then this Count 7 is

21     dangling out there.

22          I understand Your Honor is heading toward the

23     direction of allowing Mr. Perrone to amend the complaint, but

24     there really needs to be a distilling of this RICO claim so

25     that even if the parties are identified separately, that that

1   RICO claim still stands on its own without having to refer to

2   multiple and different counts in the complaint.

3        It's just -- I'm not a RICO civil conspiracy expert,

4   but I think I can figure things out, and I've just had an

5   extremely challenging time doing that.

6        And there's references to in Count 2 the Hobbs Act and

7   bringing up fiduciary duties.  I mean where do fiduciary duties

8   come into this civil RICO matter?

9        So there's just multiple allegations within the same

10  paragraph, not identifying the defendants separately, which

11  really created the problems with responding to the complaint.

12       And the other thing that, maybe this isn't a pleading

13  issue, but it's almost like there is an inference of nefarious

14  intent just by these entities and individuals doing business

15  together.  I mean that's not a civil RICO claim which is why in

16  the request for the premotion conference I brought up the

17  requirement that to establish these predicate acts and to

18  support the civil RICO claim that there's got to be some more

19  specificity in the time, place, and content of these

20  representations because we have got multiple agreements and

21  approvals by the township, and Mr. Perrone's client is aware of

22  all of these things that transpired.  There's nothing hidden or

23  secretive to this.  There's mountains of documents pertaining

24  to these transactions, and there has to be more in terms of the

25  pleading specificity rather than just general references to a

1   lease here or there or some communications that somebody may

2   have had in a conference in Las Vegas.  That doesn't satisfy

3   the pleading requirements for a civil RICO case, and if that's

4   what we end up with, we are going to be back with a 12(b)(6)

5   motion for failing to specify those requirements to satisfy a

6   civil RICO claim.

7          THE COURT:  Well, I can tell you that in my experience

8   I can't think of a single civil RICO case that was pled with

9   any degree of understanding what that cause of action is really

10  all about.  I don't know why that is.  I don't know whether it

11  is such, it's an area of such esoteric understanding, or if

12  it's just pleaders who are sort of out of their comfort zone.

13  But this case fits right in there.

14          And if there is going to be an amended complaint,

15  which I think I'm leaning very strongly towards, you're going

16  to have to do the two things that Mr. Matheson just identified.

17  You're going to have to, first of all, untangle these multiple

18  allegation counts and paragraphs that seems to go on forever.

19  And secondly, you're going to have to be much more cognizant of

20  which defendants you are accusing of what.  Because I had a

21  hard time, I had a heck of a time trying to figure that out.

22  And I didn't spend the kind of time that I'm sure defense

23  counsel has spent trying to figure it out, and it really isn't

24  my job to figure it out.  It's plaintiff's counsel's job to

25  make his claims clear and unmistakable so that defendants can

1    properly respond.  And honestly, I don't see how, because this

2    is so confusing, I don't see how we could have a 12(b)(6)

3    motion at this point.  We just don't have any organization or

4    coherence in this complaint.

5         Rita, what further do you have?

6         THE LAW CLERK:  I'm good.  Thank you.

7         THE COURT:  Okay.  So in addition to the order which

8    is going to come out of this conference that says I'm not

9    accepting supplemental jurisdiction subject to Mr. Perrone's

10   briefing if he wishes to do that, it's going to be an

11   amendment, a second amended complaint may be filed within

12   30 days, and it must adhere to the pleading discussions had at

13   this conference, including paragraphs which state more than one

14   claim or cause of action are to be recast properly, and the

15   second thing that is going to have to happen in this amended

16   complaint is that it must be clear precisely which defendants

17   are being charged under each count of the complaint.

18        I would also urge you, and this is going to be in the

19   order as well, that when you redraft your complaint you really

20   seriously and carefully think about whether you are prepared to

21   go ahead with an eight-count complaint which includes four RICO

22   counts.

23        Again, you know, I don't really understand all of the

24   counts, I'll be really honest with you.  And you've got to do

25   that.  You've got to make it understandable, not only to the

1    defendants but to the judge as well.

2        THE LAW CLERK:  Would you like the order to deny the

3    premotion conference request without prejudice?

4        THE COURT:  Yes, yes, yes.  At the end of 30 days

5    after we've seen the amended complaint, then I think defense

6    counsel is going to have to decide whether based on the amended

7    complaint you want to proceed again with a Rule 12(b)(6)

8    motion.  And I really do think you're going to have to just

9    replead it.  I just, if Mr. Perrone complies with my concerns

10   and your concerns about this complaint, if he does clean it up

11   to the point where we can understand it, then defense counsel

12   will have 14 days to determine whether they wish another

13   premotion conference or whether they want to proceed to answer.

14       What else do we need in the order, Rita?

15       THE LAW CLERK:  I think that's everything.  Yes.  So

16   obviously the answer deadlines are extended.  Suspended may be

17   is a better word.

18       THE COURT:  If you do add additional defendants,

19   you're going to have to wait and see whose going to represent

20   them if they're current defense counsel; if there are other

21   defense counsel going to come in here, we will have to use the

22   jury room for any further premotion conference.

23       MR. MATHESON:  Is that additional defendants or

24   additional plaintiffs?

25       MR. PERRONE:  Defendants and possibly plaintiffs.

1      MR. MATHESON:  Okay.

2      MR. MEAGHER:  Judge, if new parties are added do we

3  stay with the 30-day time frame if they are going to have a

4  different time frame for answering the complaint?

5      THE COURT:  That's his time frame, 30 days to amend

6  and that will include adding parties.  At that point, well,

7  probably what the order should say is that if no defendants are

8  added, then the current defendants will have 14 days to decide

9  whether to seek a second premotion conference.  If there are

10  added defendants, then I think I should give you at least

11  30 days to try to, or to wait and see who will be representing

12  those parties, and you may, defense counsel may want to in some

13  way collaborate on your, what you want to do next.  I really

14  would urge you to spend sometime discussing your defenses

15  together.  It sounds like a lot of what you are concerned about

16  you have in common, and what that suggests to me is that a

17  more, a single approach rather than separate approaches with

18  regard to potential dispositive motion.

19      I don't really, I haven't really thought that through,

20  but some sort of coordination makes sense to me where,

21  particularly with regard to the RICO issues, your concerns are

22  all the same.  And frankly, those are the same kinds of

23  concerns I always see in civil RICO pleadings where the

24  defendants have the same sense of, you know, the enterprise

25  isn't properly identified, the predicate acts aren't

1      sufficient, and so forth.  So give that some thought if you

2      would.  Maybe it's not possible.  I don't know.  Maybe you guys

3      are not good friends.  But just give it some thought.

4           Have you got any questions, comments, concerns?

5           MR. MEAGHER:  I do have, Judge.  I raise the question

6      on behalf of the DDA, the fact that we could not be responsible

7      for a RICO claim because we could not form the requisite

8      intent.  And I don't know, you know, if we want to press that

9      in terms of what should and should not show up in any amended

10     complaint.  If I'm right, I don't see any point in having those

11     RICO claims against the DDA.

12          THE COURT:  Well, I think, Mr. Perrone, you should

13     consider that.  I don't have a sense of that.  You know, my

14     sort of gut reaction is you're probably right.  But unless you

15     want us all to go off chasing a wild hare, think about that.

16     And act accordingly when you redraft your complaint.

17          Are there any other concerns?

18          MS. COLLINS:  Your Honor, you had mentioned that if he

19     was going to file supplemental briefing related to objecting to

20     supplemental jurisdiction but I'm not sure you set a time

21     frame.

22          THE COURT:  Within that same 30 days.  Yeah.  And

23     defense counsel should advise me if they wish to respond.  If

24     he files a brief objecting to the dismissal of the supplemental

25     jurisdiction denial, then defense counsel should advise me

1   whether they wish to respond.  And, again, it seems to me that

2   for that kind of a situation in particular, a single

3   coordinated response on behalf of all the defendants might make

4   some sense.  You might want to designate one of you to be the

5   drafter.

6           Anything else I can help you with this afternoon?

7   Okay.  Great.  Thanks so much.

8           MR. MEAGHER:  Thank you, Your Honor.

9           MR. PERRONE:  Thank you, Your Honor.

10          (Proceedings concluded, 1:59 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE


        I, Kathy J. Anderson, Official Court Reporter for the

United States District Court for the Western District of

Michigan, appointed pursuant to the provisions of Title 28,

United States Code, Section 753, do hereby certify that the

foregoing is a full, true and correct transcript of the

proceedings had in the within entitled and numbered cause on

the date hereinbefore set forth; and I do further certify that

the foregoing transcript has been prepared by me or under my

direction.




                            /s/ Kathy J. Anderson

                            Kathy J. Anderson, RPR, FCRR

                            U.S. District Court Reporter

                            412 Federal Building

                            Grand Rapids, Michigan  49503